**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TEGAN SABATIER,**

**Plaintiff,**

**v.** **Case No.: 6:26-cv-428-JSS-NWH**

**METADOT CORPORATION,**

**Defendant.**
______________________________/

## REPORT AND RECOMMENDATION

This matter is before the undersigned on Plaintiff/Counterclaim Defendant Tegan Sabatier's Motion to Dismiss Counts III and V of Defendant/Counterclaim Plaintiff Metadot Corporation's Counterclaim, and in the Alternative, Motion for More Definite Statement as to Count V (Doc. 19, the "Motion"). Defendant/Counterclaim Plaintiff Metadot Corporation filed a Response in Opposition to the Motion. (Doc. 27). For the reasons discussed below, the undersigned respectfully recommends that the Court grant the Motion and dismiss Counts III and V (of the Counterclaim) without prejudice.

## BACKGROUND[1]

Plaintiff/Counterclaim Defendant Tegan Sabatier ("Sabatier") was employed as the "Head of Growth" for Defendant/Counterclaim Plaintiff Metadot, Inc.

[1] The information in this section is derived from the allegations in the Counterclaim (Doc. 13).

("Metadot") between March 11, 2025, and July 30, 2025.[2] Her salary was $11,205.00 per month, and she was provided with fifteen days of paid time off ("PTO"). (Doc. 13 at 7). In the negotiations that preceded her hiring, Sabatier informed Metadot about a 3-week family vacation scheduled between June and July 2025. Although this vacation would exceed her fifteen days of PTO, she stated in a March 3, 2025 email to Metadot that she would take the time in excess of the PTO as "unpaid vacation." (*Id.*). Metadot agreed to this proposal and sent Sabatier paperwork to accept the offer of employment. (*Id.* at 8). Included in the employment paperwork was a Wage Deduction Authorization form (attached to the Counterclaim at Exhibit B) signed by Sabatier that permitted Metadot to recover any overpayment of her wages by deducting money from subsequent paychecks. (*Id.* at 17).

Sabatier took her family vacation between May 29, 2025, and July 4, 2025, but Metadot, apparently inadvertently, paid Sabatier her entire salary during that time. (Doc. 13 at 8-9; Doc. 1, ¶ 11). In total, after accounting for all her available PTO, Metadot calculated that Sabatier was paid for 120 hours of leave that should have been unpaid, resulting in an overpayment of $8,437.50. (Doc. 13 at 9). Metadot informed Sabatier of this debt via email on July 23, 2025, but she was fired on July 30, 2025, for

[2] The Complaint alleges that Plaintiff was the "Head of Growth" for "Mojo Helpdesk," but does not explain the relationship between that entity and Metadot. In fact, neither party explains this relationship. All the briefing assumes that Plaintiff was employed by Defendant Metadot, and exhibits to the Counterclaim appear to confirm this assumption. As a result, the undersigned will assume for purposes of this Report and Recommendation that Plaintiff was employed by Metadot. The specific nature of the employment relationship is not dispositive of the issues discussed herein.

"poor performance." (*Id.*). Despite a follow-up demand letter from Metadot, Sabatier never paid this balance. (*Id.*).

Metadot filed suit against Sabatier in Florida state court but ultimately dismissed that case and brought this Counterclaim when Sabatier filed the instant suit. (*Id.* at 6). The Counterclaim asserts five causes of action against Sabatier, each premised on the same $8,437.50 in overpaid wages: Count I for promissory estoppel, Count II for unjust enrichment, Count III for conversion, Count IV for negligent misrepresentation, and Count V for breach of contract. The Motion seeks dismissal of Count III and either dismissal or a more definite statement with respect to Count IV.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Count III – Conversion

Sabatier contends that Count III should be dismissed because, under Florida

law,[3] a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft. She appears to be correct. *See e.g., Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *Belford Trucking Co. v. Zagar,* 243 So. 2d 646, 648 (Fla. 4th DCA 1970); *Johnson v. Chase Bankcard Servs., Inc.,* 582 F. Supp. 3d 1230, 1238 (M.D. Fla. 2022) (concluding that "fungible money . . . cannot be the basis of a conversion claim"). A conversion claim based on stolen money can only exist "if the funds are specific and identifiable." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009) (collecting cases). "To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Belford Trucking*, 243 So. 2d at 648. "Florida courts have indicated that 'money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit.' " *Johnson,* 582 F. Supp. 3d at 1237 (quoting *Belford Trucking*, 243 So. 2d at 648) (alteration accepted); *see also Pishevar v. Hotels.com*, No. 24-cv-22081-BLOOM/Elfenbein, 2024 WL 4602798, at *6 (S.D. Fla. Oct. 29, 2024) ("Here, even though Plaintiff can identify the date of the transactions, the Complaint is devoid of any allegations that the funds are held in a specific account or can be traced to a specific location. Thus, Plaintiff has failed to adequately plead a conversion claim."). This case does not involve any such

[3] Both parties assume without discussion that Florida law applies to these claims and, as a result, so will the undersigned.

earmarked money, and as a result, Count III is due to be dismissed.[4]

**II. Count V – Breach of Contract**

Metadot's breach of contract counterclaim is also ripe for dismissal. Count V itself is only three sentences that merely recite the elements of a breach of contract claim. (*See* Doc. 13 at 12 ("A contract existed between Sabatier and Metadot. Sabatier materially breached the contract. As a direct result of Sabatier's breach of contract, Metadot has been damaged.")). These allegations are not sufficient to survive a motion to dismiss, and the background allegations in the Counterclaim do not change that result.

As an initial matter, Metadot has not attempted to state a claim for breach of an *express* contract. It alleges that Sabatier signed the Wage Deduction Authorization form, but that document provides only that Metadot can deduct money from Sabatier's paycheck. (Doc. 13 at 17, Exhibit B). Since Sabatier was fired before any of the subject money could be deducted, it is hard to see how that document can form the basis for a breach of contract claim based on the facts alleged here—and Metadot does not argue otherwise.

Rather, Metadot argues in its Response that Count V is based on a "quasi-contract or implied-in-fact contract" theory, (Doc. 27 at 4-5), but in Florida "quasi-

[4] Metadot cites several cases in its Response in which courts permitted a claim for conversion against an employee to go forward—as well as one case where the court dismissed a conversion claim because the defendant did not allege that Plaintiff converted "the requisite specific and identifiable funds." *Greenberg v. Pike Elec. Corp.*, No. 8:14-cv-795-T-33TBM, 2015 WL 477370, at *2 (M.D. Fla. Feb. 5, 2015) (quoting *Tambourine Comercio*, 312 F. App'x at 272) (internal quotation marks omitted). The cases cited by Metadot are distinguishable, and Metadot's assertion that "the wage overpayment that Sabatier has not returned" constitutes specific and identifiable funds is unpersuasive.

contract" is synonymous with unjust enrichment. *Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC,* 67 F.4th 1312, 1316 (11th Cir. 2023) ("Florida courts use the term 'contract implied in law' interchangeably with 'unjust enrichment' and 'quasi contract.' "). While a party may plead a claim in the alternative, it cannot plead an identical claim in two separate counts. Here, Metadot alleges a claim for unjust enrichment in Count II.

Contracts implied-in-fact are different. Unlike contracts implied-in-law, parties to contracts implied-in-fact "have . . . entered into an agreement[.]" *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999). But they entered into that agreement "without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.* (citation and internal quotation marks omitted). A contract implied-in-fact is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996) (citation and internal quotation marks omitted). An implied-in-fact contract requires the same elements as an express contract—*i.e.*, the existence of a contract, breach of a material term, and damages—and differs only in the parties' method of expressing mutual consent. *Fertilizantes Tocantins S.A. v. TGO Agric.* (USA), Inc., 599 F. Supp. 3d 1193, 1206 (M.D. Fla. 2022).

Metadot alleges a contract implied-in-fact in the Counterclaim, but not one that Sabatier breached. The "bargained for exchange," according to Metadot, was "time

off in return for foregoing pay." (Doc. 27 at 5). In other words, Metadot agreed to allow Sabatier to take additional vacation time beyond her allotted PTO, but that time would be unpaid. Instead of withholding her pay during the unpaid portion of her vacation, however, Metadot paid Sabatier. The Counterclaim fails to allege any facts to suggest that Sabatier and Metadot agreed (implicitly or explicitly) that Sabatier would *repay* Metadot if it failed to properly withhold her salary. Rather, the Parties agreed that Sabatier would forgo pay for vacation time over her allotted PTO, and that Metadot could recover overpayments by deducting money from her pay, but Metadot has not pleaded that Sabatier breached either of these obligations. While Metadot's existing allegations may establish a contract *implied-in-law* for the repayment of those wages—*i.e.*, unjust enrichment—they do not state a claim for breach of a contract implied-in-fact. Consequently, the undersigned recommends dismissing Count V.

## RECOMMENDATION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court **GRANT** Plaintiff/Counterclaim Defendant Tegan Sabatier's Motion to Dismiss Counts III and V of Defendant/Counterclaim Plaintiff Metadot Corporation's Counterclaim, and in the Alternative, Motion for More Definite Statement as to Count V (Doc. 19) and **DISMISS** Counts III and V of the Counterclaim without prejudice.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this

report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on July 29, 2026.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties